# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

| | | |
|---|---|---|
| STATES OF MISSOURI, ALASKA, ARIZONA, ARKANSAS, INDIANA, KANSAS, MONTANA, NEBRASKA, OHIO, OKLAHOMA, SOUTH CAROLINA, TENNESSEE, UTAH, | ) ) ) ) ) ) | |
| *Plaintiff-Appellants*, | ) ) | |
| v. | ) ) | Case No. 21-3013 |
| JOSEPH R. BIDEN, JR., IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, ET AL., | ) ) ) ) | |
| *Defendants-Appellants.* | ) | |

## PETITION FOR REHEARING EN BANC

Thirteen States, Appellants, petition this Court for rehearing en banc because the panel decision conflicts with this Court's decision in *Iowa League of Cities v. EPA*, 711 F.3d 844, 859 (8th Cir. 2013), and reversal is necessary to secure uniformity of the Court's decisions and due to the exceptional important questions presented. *See* FED. R. APP. P. 35(a)(1) & (2).

## INTRODUCTION

In 2010, the Obama Administration's Interagency Working Group first recommended that agencies use a set of estimates (specific values in dollars) to account for the "social cost" of carbon to quantify avoided climate change damages from reduced carbon dioxide emissions. Govt. Br. at 8. To arrive at these values,

the Working Group claimed to use three Integrated Assessment Models (IAMs) and run five socioeconomic and emissions scenarios to estimate the total emissions and determine the global damages that would result. *Id.* at 9. The Working Group then averaged the total damages and discounted those values at three different rates to produce exact monetary values. *Id.* Over the last decade, these exact monetary values have been revised four times. *Id.* at 9–11. The Working Group claims that their work has been subject to notice and comment, including the underlying methodology (the IAMs and the socioeconomic and emissions scenarios).[1] *Id.* at 9.

    Until the present Administration, the social costs of greenhouse gases (expanded to include methane and nitrous oxide) had been recommended or permissive. *Id.* President Biden signed Executive Order 13990 that required the Working Group to publish interim social costs of greenhouse gases (Interim Values) within 30 days that "agencies shall use" "when monetizing the value of changes in greenhouse gas emissions resulting from regulations and other relevant agency actions until final values are published." E.O. 13990, § 5(b)(ii)(A). Without notice and comment, the Working Group published the "interim" social costs of greenhouse

---

[1] This representation is inaccurate. Commenters attempted to point out issues with how the Working Group had manipulated the IAMs and other deficiencies, but the Working Group "further clarified that it was not requesting comments on the three peer reviewed [integrated assessment models, or] IAMs themselves." Working Group, *Response to Comments: Social Cost of Carbon for Regulatory Impact Analysis Under E.O. 12866*, at 3 (July 2015).

2

gases that remain in effect today.² JA 36, R. Doc. 6, at 18 ("[T]he Working Group did not elicit or receive comments or input from the public or stakeholders before publishing the Interim Values.").

The Working Group acknowledged that one of the most important inputs to the social costs, "the choice of a discount rate … *raises highly contested and exceedingly difficult questions of science, economics, ethics, and law*." JA 89, R. Doc.6-2, at 17 (emphasis added). It also noted that, among other deficiencies, "the socioeconomic and emissions scenarios used as inputs to the models in this TSD do not reflect new information from the last decade of scenario generation or the full range of projections." JA 103, R. Doc. 6-2, at 31. In other words, Interim Values did not reflect known information from the last decade and made difficult policy choices without public input.

After the Interim Values were published, thirteen States sued on a number of different theories but prominently argued that they had been denied the opportunity to participate in notice-and-comment when the Working Group formulated the Interim Values. JA 54, R. Doc. 6, at 37–38. The complaint alleged that the Working Group violated the Administrative Procedure Act (APA) by issuing the Interim

---

² The States note that although the Working Group has gone through the motions of notice and comment for the "final" estimates (expected in January of 2022), being able to comment on the next iteration of the social costs does not cure the injury of being unable to comment on the currently binding Interim Values.

Values without notice and comment. JA 56–57, R. Doc. 6, at 69–41. It also alleged that the Interim Values were both contrary to law and arbitrary and capricious under the APA. *Id.* The States explained that the binding nature of the Interim Values both made these values different from past Administrations and that denial of the right to participate in notice-and-comment constituted a redressable injury that conferred Article III standing. States' Br. at 21–22.

The district court dismissed the case for lack of standing, and a panel of this Court affirmed. The panel decision acknowledged *Iowa League of Cities* held that the "guidance letters … were binding policy promulgations that threatened the plaintiffs' concrete interest 'in avoiding regulatory obligations above and beyond those that can be statutorily imposed upon them.'" *State v. Biden*, 52 F.4th 362, 370 (8th Cir. 2022). It concluded that the alleged procedural harm was "untethered to any specific harm" and therefore the States were "asserting only 'a procedural right *in vacuo*.'" *Id.* at 370–371.

Perhaps recognizing the weakness of the decision's reasoning, the panel went further and held that the APA's notice and comment requirements do not apply to the Working Group. *Id.* at 371. Notably, the Federal Appellees did not argue that the definition of agency contained in 5 U.S.C. § 551(1) did not include the Working Group. Govt. Br. at 60–61. The panel held that because no binding interpretation of the APA existed that applied to this novel use of Government authority, the States

4

had failed to "alleged plausible procedural injury in fact." *State*, 52 F.4th at 371.

This timely petition for rehearing en banc followed.

## ARGUMENT

This Court should grant rehearing en banc to secure "uniformity of the Court's decisions" and due to the exceptionally important issues presented. FED. R. APP. P. 35(a)(1) & (2). The panel decision conflicts with *Iowa League of Cities* because the States have a concrete interest "in avoiding regulatory obligations above and beyond those that can be statutorily imposed upon them." 711 F.3d at 871. The decision permits the Working Group (overwhelmingly consisting of Department heads) to "dodge[] the APA's notice and comment procedures and *de facto* implement[] new legislative rules regulating" every agency and all rule makings, which is entirely inconsistent with *Iowa League of Cities*. *Id.* at 870–871. The States have alleged and submitted facts showing that the underlying methodology (the IAMs and the scenarios) are hopelessly arbitrary, and thus have shown that "there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Id.* at 871. Further, the binding nature of the Working Group's Interim Values have a determinative effect on all other agencies and "alter[] the legal regime to which the [future] agency is subject." *Bennett v. Spear*, 520 U.S. 154, 169 (1997).

The decision and more generally the case presents exceptionally important

5

legal issues relating to the Executive's novel attempt to impose binding legislative rules through interagency working groups without adhering to the APA's procedures. The decision highlights the novel use of interagency groups, previously "intended only to improve the internal management of the Federal government," *Meyer v. Bush*, 981 F.2d 1288, 1290 (D.C. Cir. 1993), to decide "highly contested and exceedingly difficult questions of science, economics, ethics, and law," JA 89, R. Doc.6-2, at 17. Had any one agency, or authority of Government, issued the Interim Values, it would be subject to the APA. Yet, in the panel's view, when that decision-making entity includes eight Cabinet Secretaries, the APA does not apply. *State*, 52 F.4th at 371 (President's interagency working groups are not an "authority of the Government of the United States" under 5 U.S.C. § 551(1)). This Court should not reward novel end runs around the APA—the primary statutory authority for agencies to exercise legislative rulemaking power—solely because precedent does not address the Executive Branch's innovations.

I. **The Decision is Inconsistent with *Iowa League of Cities* Because the States have a Right to Comment on Rules to Avoid Regulatory Obligations.**

*Iowa League of Cities* holds that when agencies create new substantive rules without notice and comment, a procedural challenge will lie when the challenger has a concrete interest in meeting regulatory responsibilities or "in avoiding regulatory obligations above and beyond those that can be statutorily imposed upon them." 711

Appellate Case: 21-3013     Page: 6     Date Filed: 12/05/2022 Entry ID: 5224061

F.3d at 871.

This Court's decision in *Iowa League of Cities* requires a different result. There, several municipalities had seen guidance letters from EPA that conflicted with the agency's official written policies relating to water treatment processes at the municipally owned sewer systems. *Id.* at 854–855. EPA claimed these letters only represented non-legislative rules and thus were exempt from the APA's procedural requirements. *Id.* at 855. The municipalities alleged that these letters modified EPA's existing rules and that they would have to comply with them in the future or risk denial of a permit application—"an expensive game of Russian roulette with taxpayer money." *Id.* at 855, 867. Like Federal Appellees here, EPA described "the harm as lurking, if at all, on the distant horizon." *Id.* at 867.

This Court rejected EPA's contention that the guidance letters were not a legislative rule. Using the test from *Molycorp, Inc. v. EPA*, 197 F.3d 543 (D.C. Cir.1999), the Court confirmed that whether an agency action has binding effects on private parties or on the agency is the ultimate focus of deciding whether the action is a legislative rule. *Id.* at 862. Otherwise, a court could "permit an agency to disguise its promulgations through superficial formality, regardless of the brute force of reality." *Id.* The Court properly found that EPA's guidance letters were legislative rules because those letters conclusively answered policy questions no matter the specific factual circumstances. *Id.* at 867–868. As a result, the

7

municipalities incurred a procedural injury based, in part, on their right to be free from regulatory burdens "above and beyond those that can be statutorily imposed upon them." *Id.* at 871.

Under *Iowa League of* Cities, the States have standing to avoid non-statutory regulatory burdens. It is undisputed that no statute establishes the Working Group nor delegates it any legislative authority. JA 289; R. Doc. 28, at 41. In the absence of such legislative delegation, the Working Group requires federal agencies to use specific numerical values without reference to record. "[W]hen an agency wants to state a principle 'in numeric terms,' terms that cannot be derived from a particular record, the agency is legislating and should act through rulemaking." *Catholic Health Initiatives v. Sebelius*, 617 F.3d 490, 495 (D.C. Cir. 2010) (quoting Henry J. Friendly, *Watchman, What of the Night?*, in BENCHMARKS 144-45 (1967)). Federal Appellees have confirmed that unless a statute specifically prohibits using the social costs of greenhouse gases (a concept unknown to most statutes), agencies must use the specific values provided. JA 276, R. Doc. 28, at 36, JA 490–91, R. Doc. 37, at 25–26. In one fell swoop, the Working Group has imposed the Interim Values on all rulemakings unless a particular statute happens to prohibit a concept that was foreign to all agencies before 2010.

The panel did not grapple with this substantial question, instead suggesting *ipse dixit* that that this was a "sensible exercise of the President's executive power."

8

*State*, 52 F.4th at 366. The decision failed to consider the binding nature of the Working Group's decision. The States explained that requiring other agencies to use specific numerical values "has a powerful coercive effect" on future agency actions that alters the legal regime. States' Br. 35–36 (citing *Bennett*, 520 U.S. at 168–170). The States explained that unlike in *Bennett* where the acting agency was "technically free to disregard" the second agency's advisory decision, here, all agencies are required to use the Working Group's Interim Values. *Id.* at 36–37; *see City of Kennett, Missouri v. EPA*, 887 F.3d 424, 431 (8th Cir. 2018) (holding that plaintiffs had standing to challenge a policy that was "binding" on a future agency action that had not yet been implemented). What the panel claimed was a procedural harm untethered to any specific harm, *State*, 52 F.4th at 367, is what *Iowa League of Cities* explained made the procedural injury concrete—when the agency's decision will be guided by the rule no matter the factual circumstances or record, 711 F.3d at 867–68.

The panel rejected that the Interim Values would be "virtually determinative" of any decision. *State*, 52 F.4th at 370. This fails to account that as a legal matter, the Interim Values bind the agencies' hands to a specific approach, and a specific set of numerical values, on what is typically the most dominant or critical factor in assessing the costs and benefits of agency action. This "alter[s] the legal regime." *Bennett*, 520 U.S. at 168–69; *see also Iowa League of Cities*, 711 F.3d at 870 ("The

9

EPA disputes [Article III] causation because it argues that the letters are *not binding*. Because we have ruled otherwise, we find that the League has established causation.") (emphasis added). The decision also fails to consider the magnitude of the social costs of annual emissions. States' Br. at 10 (noting hundreds of billions in social costs in one year). Compounding "saved" emissions for any action over decades results in hundreds of billions in "regulatory" benefits. *Id.* at 14.

Further, the panel's invocation of *Summers v. Earth Island*, 555 U.S. 488 (2009), provides no shelter. In that case, the Supreme Court held that once the litigants had settled the dispute over specific land tracts subject to a management plan, the litigants could not re-allege procedural injury to the management plan as a whole. *Id.* at 491. The Court explained that since no case existed, the litigants were attacking a regulation in the abstract based on "a procedural right in vacuo." *Id.* at 494, 496. Here, the States have never had the opportunity to comment on the Interim Values that, in hindsight, look more like the final 2021 values.

Under *Iowa League of Cities*, the States have a procedural right to comment on the agency action to avoid billions of dollars of regulatory burdens that no statute imposes and fundamentally alters the legal regime of subsequent rulemakings.

## II. The Panel Decision Raises Exceptionally Important Questions as to Allowing the Executive to Exercise Legislative Rulemaking Power Without Complying with the APA.

The panel raised, *sua sponte*, a new statutory construction issue, arguing that

10

interagency working groups are not subject to the APA because they are not an authority of the U.S. Government as defined in 5 U.S.C. § 551(1). State, 52 F.4th at 371. This is extraordinarily troubling and creates a new avenue for the Executive Branch to use legislative rule-making powers without complying with the APA. Though the decision rested on concerns about the scope of a statute, *id.*, the decision faults the States for attempting to expand the APA, instead of recognizing that the Working Group is a novel attempt to make an end-run around the APA.

The States have consistently argued that the Working Group is an agency because it acts with substantial independent authority and has the power to bind other agencies. States Br. at 47–48; *see also Iowa League of Cities*, 711 F.3d at 862. It is undisputed that this is the first time that the Working Group has required, rather than recommended, the use of the social costs of greenhouse gases. This is a significant and novel departure from decades of interagency groups, including the Task Force on Regulatory Relief in *Meyer*. 981 F.2d at 1289–90 (suggesting review of specific rules). Indeed, the test for whether an agency action is a legislative rule recognizes that if courts do not focus on the binding nature of an action, the Executive Branch will seek to avoid review through "superficial formality." *Iowa League of Cities*, 711 F.3d at 862.

Courts reviewing the substantive functions of a challenged "agency" are common in FOIA litigation, *see Meyer* and *Soucie v. David*, 448 F.2d 1067, 1073

11

(D.C. Cir. 1971), and comport with *Iowa League of Cities* substantive review of agency action. The panel sought to distinguish these precedents because 5 U.S.C. § 552(f)(1) includes "or other establishment in the executive branch of the Government (including the Executive Office of the President)" within the definition of agency and 5 U.S.C. § 551(1) defines agency as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency." But the statutory definitions do not resolve the issue.

There are ample reasons to determine that the Working Group here is an "authority" of the U.S. Government. *First*, although Federal Appellees balk at labeling the Working Group an agency, they find *Soucie* instructive to this dispute. JA 288, R. Doc. 28, at 40 n.24. *Second*, eight Cabinet Secretaries are members of the Working Group, and each Department is a recognized authority. It would be odd to relieve these members of the APA's requirements when the Working Group exercises legislative rulemaking power to bind their own and other agencies' actions. *Third*, the textual definition of agency in § 551(1) is broader than § 552(f) because it includes all authorities, except those it expressly excludes. Further, section 552(f) states that the term "'agency' as defined in section 551 of this title includes…." making explicit that an "authority" of the U.S. Government for purposes of FOIA includes the Executive Office of the President. As explained by the D.C. Circuit, the Supreme Court relied on this change to § 552 and its legislative history to hold

12

that it means the Executive Office and that "someone acting as a 'Presidential adviser, only' could not be considered an 'agency' subject to FOIA under § 552(f)." *Energy Rsch. Found. v. Def. Nuclear Facilities Safety Bd.*, 917 F.2d 581, 584 (D.C. Cir. 1990) (citing *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 156 (1980)). But that case does not resolve the novel issue of whether a Working Group issuing binding rules requiring agencies to exercise their legislative rulemaking powers in a particular way is an authority of the U.S. Government.

Although no case directly addresses the issue, finding that the Working Group is an agency comports with the case law in *Meyer* and *Soucie*. The APA "confers agency status on any administrative unit with *substantial independent authority* in the exercise of specific functions." *Soucie*, 448 F.2d at 1073 (emphasis added). In *Soucie*, the D.C. Circuit concluded that the Office of Science and Technology was an "agency" because it had the authority to "evaluate the scientific research programs of the various federal agencies," *id.*, thus exercising some of Congress's "broad power of inquiry," *id.* at 1075. Here, the Working Group can go much farther than merely "evaluating" other agencies—it can dictate their conclusion on a policy question of enormous practical significance.

The Working Group's inherent authority to issue legally binding directives to other federal agencies decisively confirms its agency status. That power was critical to the D.C. Circuit's reasoning in *Meyer v. Bush*, 981 F.2d 1288, 1292 (D.C. Cir.

13

1993. *Meyer* held that an agency exercises "substantial independent authority" when it can "act directly and independently beyond advising and assisting the President." *Id.* Critically, *Meyer* reasoned, an agency like CEQ that had "the power … to issue guidelines to [other] federal agencies," and "the authority to promulgate regulations—*legally binding* on the agencies—implementing the procedural provisions of the National Environmental Policy Act," was plainly an APA "agency." *Id.* (emphasis added). The "power to issue formal, legally authoritative commands to entities or persons within or outside the executive branch" confirms that the creature is an "agency." That is exactly what the Working Group possesses here.

The States ask that the Court find that this Working Group, unique among interagency working groups because it issues binding directives to other agencies, is an "authority" of the U.S. Government. Such a decision does not elevate individual officials that simply advise the President to "agency" status. Instead, it recognizes that entities deciding "exceedingly difficult questions of science, economics, ethics, and law" that legally bind other agencies should abide by the APA's procedural requirements and be subject to judicial review.

The precise name of the entity exercising legislative rulemaking power should not matter, and the panel decision decided an important statutory question that permits the Executive Branch make an end-run around the APA.

# CONCLUSION

The Court should grant rehearing en banc to resolve the conflict with *Iowa League of* Cities and for presenting an exceptionally important question.

Respectfully submitted,

**ERIC S. SCHMITT**
*Attorney General of Missouri*

/s/ *Jeff P. Johnson*
D. John Sauer, MO 58721
  Solicitor General
Jeff P. Johnson, MO 73249
  Deputy Solicitor General
Office of the Missouri
Attorney General
Supreme Court Building
P.O. Box 899
Jefferson City, Missouri 65102
Phone: 573-751-8870
Fax: 573-751-0774
John.Sauer@ago.mo.gov

*Attorneys for Plaintiffs-Appellants*

Additional counsel:

**TREG R. TAYLOR**
**Attorney General of Alaska**
Ronald W. Opsahl
Assistant Attorney General
Alaska Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Ph:  (907) 269-5100
F:  (907) 276-3697
Email: ron.opsahl@alaska.gov
*Counsel for the State of Alaska*

**MARK BRNOVICH**
**Attorney General of Arizona**
Robert J. Makar
Assistant Attorney General
2005 N. Central Avenue
Phoenix, Arizona 85004
Ph:  (602) 542-5205
Robert.Makar@azag.gov
*Counsel for the State of Arizona*

**LESLIE RUTLEDGE**
**Attorney General of Arkansas**
Nicholas J. Bronni
  Solicitor General
Dylan L. Jacobs
  Assistant Solicitor General
Office of Arkansas Attorney General Leslie Rutledge
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Ph: (501) 682-6302
Nicholas.bronni@arkansasag.gov
*Counsel for the State of Arkansas*

**DEREK SCHMIDT**
**Attorney General of Kansas**
Jerry Edwards
Assistant Solicitor General
Office of Kansas Attorney General Derek Schmidt
120 SW 10th Avenue, 3rd Floor
Topeka, KS 66612-1597
Ph: (785) 368-8435 Phone
F: (785) 291-3767 Fax
Jerry.Edwards@ag.ks.gov
*Counsel for the State of Kansas*

**DOUGLAS J. PETERSON**
**Attorney General of Nebraska**
James A. Campbell
  Solicitor General
Justin D. Lavene
  Assistant Attorney General
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509

**THEODORE E. ROKITA**
**Attorney General of Indiana**
Tom Fisher
Solicitor General
Kian Hudson
Deputy Solicitor General
Office of Attorney General Todd Rokita
302 West Washington Street
IGCS-5th Floor
Indianapolis, IN 46204
Ph: (317) 232-0709
F: (317) 232-7979
kian.hudson@atg.in.gov
*Counsel for the State of Indiana*

**AUSTIN KNUDSEN**
**Attorney General of Montana**
David M.S. Dewhirst*
  Solicitor General
Montana Attorney General's Office

215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Ph: (406) 444-4145
david.dewhirst@mt.gov
*Counsel for the State of Montana*

**DAVE YOST**
**Attorney General of Ohio**
Benjamin M. Flowers
Ohio Solicitor General
30 E. Broad St., 17th Fl.
Columbus, Ohio 43215
Ph: (614) 466-8980

bflowers@ohioattorneygeneral.gov
*Counsel for the State of Ohio*

Ph: (402) 471-2682
jim.campbell@nebraska.gov
*Counsel for the State of Nebraska*

**JOHN O'CONNOR**
**Attorney General of Oklahoma**
Mithun Mansinghani
  Solicitor General
Bryan Cleveland
  Assistant Solicitor General
Oklahoma Office of Attorney General
313 N.E. 21ST Street
Oklahoma City, OK 73105
Ph: (405) 522-4392
mithun.mansinghani@oag.ok.gov
*Counsel for the State of Oklahoma*

**ALAN WILSON**
**Attorney General of South Carolina**
J. Emory Smith, Jr.
Deputy Solicitor General
Office of the Attorney General
PO Box 11549
Columbia South Carolina 29211
Ph.: (803)734-3680
F: (803) 734-3677
esmith@scag.gov
*Counsel for the State of South Carolina*

**JONATHAN SKIRMETTI**
**Attorney General of Tennessee**
Office of Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
Phone: (615) 532-2580
*Counsel for the State of Tennessee*

**SEAN D. REYES**
**Attorney General of Utah**
Melissa A. Holyoak
  Solicitor General
Utah Attorney General's Office
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
385.271.2484
melissaholyoak@agutah.gov
*Counsel for the State of Utah*

**Certificate of Compliance**

I hereby certify that this document complies with the requirements of Fed. R. App. P. 32(c)(2), and the type-volume limits of Fed. R. App. P. 35(b)(2)(A), in that it contains 3,400 words (as determined by the word-count feature of Microsoft Word), excluding the parts exempted by Fed. R. App. P. 32(f). I further certify that

this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), in that this document has been prepared in Times New Roman, 14-point font.

/s/ *Jeff P. Johnson*
Jeff P. Johnson

**Certificate of Service**

I hereby certify that on December 5, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Jeff P. Johnson*
Jeff P. Johnson