# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

STATES OF MISSOURI, ALASKA, ARIZONA, ARKANSAS, INDIANA, KANSAS, MONTANA, NEBRASKA, OHIO, OKLAHOMA, SOUTH CAROLINA, TENNESSEE, UTAH,

Plaintiffs-Appellants,

v.

JOSEPH R. BIDEN, JR., in his official capacity as the President of the United States; SHALANDA YOUNG, in her official capacity as Acting Director of the Office of Management and Budget; CECILIA ROUSE, in her official capacity as Chair of the Council of Economic Advisers; ERIC LANDER, in his official capacity as Director of the Office of Science and Technology Policy; U.S. ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN, in his official capacity as Administrator of the Environmental Protection Agency; U.S. DEPARTMENT OF ENERGY; JENNIFER GRANHOLM, in her official capacity as Secretary of Energy; FEDERAL ENERGY REGULATORY COMMISSION; RICHARD GLICK, in his official capacity as Chairman of the Federal Energy Regulatory Commission; U.S. DEPARTMENT OF TRANSPORTATION; PETER BUTTIGIEG, in his official capacity as Secretary of Transportation; U.S. DEPARTMENT OF AGRICULTURE; TOM VILSACK, in his official capacity as Secretary of Agriculture; U.S. DEPARTMENT OF THE INTERIOR; DEB HAALAND, in her official capacity as Secretary of the Interior; U.S. BUREAU OF LAND MANAGEMENT; NADA CULVER, in her official capacity as Deputy Director of the U.S. Bureau of Land Management; and INTERAGENCY WORKING GROUP ON SOCIAL COST OF GREENHOUSE GASES, UNITED STATES GOVERNMENT,

Defendants-Appellees.

On Appeal from the United States District Court for the Eastern District of Missouri

## RESPONSE TO PETITION FOR REHEARING EN BANC

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*
SAYLER A. FLEMING
  *United States Attorney*
MICHAEL S. RAAB
THOMAS PULHAM
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7323*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, NW*
  *Washington, DC 20530*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ............................................................... 1

STATEMENT ........................................................................................ 2

ARGUMENT ......................................................................................... 9

The Unanimous Panel Decision Was Correct And Does Not Warrant
En Banc Review ........................................................................... 9

    A.    Article III Does Not Permit Suits Founded on Generalized
Fears of Future Regulation ..................................................9

    B.    The Working Group Is Not an Agency Because it Exercises
No Independent Authority ...............................................15

CONCLUSION .....................................................................................20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Bennett v. Spear,*
520 U.S. 154 (1997) ...........................................................................14

*Citizens for Responsibility & Ethics in Washington v. Office of Admin.,*
566 F.3d 219 (D.C. Cir. 2009) ...........................................................15

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ...........................................................................11

*Cotton v. Heyman,*
63 F.3d 1115 (D.C. Cir. 1995) ...........................................................17

*Dong v. Smithsonian Inst.,*
125 F.3d 877 (D.C. Cir. 1997) ...........................................................16

*Flue-Cured Tobacco Coop. Stabilization Corp. v. U.S. EPA,*
313 F.3d 852 (4th Cir. 2002) .............................................................19

*Franklin v. Massachusetts,*
505 U.S. 788 (1992) ...........................................................................17

*Iowa League of Cities v. EPA,*
711 F.3d 844 (8th Cir. 2013) .................................................7, 12, 13

*Louisiana v. Biden,*
No. 22-30087, 2022 WL 866282 (5th Cir. Mar. 16, 2022) ...........8, 9, 10, 11
No. 21A658 (U.S. May 26, 2022) .........................................................9

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ...........................................................................12

*Main St. Legal Servs., Inc. v. National Sec. Council,*
811 F.3d 542 (2d Cir. 2016) ...............................................................15

Appellate Case: 21-3013      Page: 3      Date Filed: 01/13/2023 Entry ID: 5235845

*Meyer v. Bush*,
  981 F.2d 1288 (D.C. Cir. 1993) ....................................................................16, 17

*Northwest Nat'l Bank v. U.S. Dep't of the Treasury*,
  917 F.2d 1111 (8th Cir. 1990).........................................................................18

*Parsons v. U.S. Dep't of Justice*,
  878 F.3d 162 (6th Cir. 2017)...........................................................................19

*Seila Law LLC v. CFPB*,
  140 S. Ct. 2183 (2020) .......................................................................................2

*Sierra Club v. Costle*,
  657 F.2d 298 (D.C. Cir. 1981) ..........................................................................2

*Soucie v. David*,
  448 F.2d 1067 (D.C. Cir. 1971) ......................................................................15

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ......................................................................................9, 12

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ....................................................................................10, 13

*Zero Zone, Inc. v. U.S. Dep't of Energy*,
  832 F.3d 654 (7th Cir. 2016)...........................................................................4

**Executive Orders:**

Exec. Order No. 12866,
  58 Fed. Reg. 51,735 (Sep. 30, 1993) ...............................................................3

Exec. Order No. 13783,
  82 Fed. Reg. 16,093 (Mar. 28, 2017) ..............................................................4

Exec. Order No. 13990,
  86 Fed. Reg. 7037 (Jan. 20, 2021) ..............................................4, 5, 13, 16, 17

Appellate Case: 21-3013     Page: 4     Date Filed: 01/13/2023 Entry ID: 5235845

**Rule:**

Fed. R. App. P. 35(a) .................................................................................9

**Other Authorities:**

86 Fed. Reg. 24,669 (May 7, 2021) ...........................................................5

*Revised 2023 and Later Model Year Light-Duty Vehicle Greenhouse Gas Emissions Standards*, 86 Fed. Reg. 74,434 (Dec. 30, 2021)..........................14

Appellate Case: 21-3013    Page: 5    Date Filed: 01/13/2023 Entry ID: 5235845

## INTRODUCTION AND SUMMARY

This lawsuit involves an attempted challenge to "the manner in which Executive Branch agencies engage in cost-benefit analysis before adopting regulations or implementing agency actions." Op. 4. Following in his predecessors' footsteps, President Biden issued an executive order instructing federal agencies how to comply with longstanding internal regulatory-review requirements. Specifically, Executive Order (E.O.) 13990 directed agencies to use a particular set of social-cost estimates developed by an interagency group of experts (the Interim Estimates) when monetizing the effects of greenhouse gas emissions resulting from a contemplated regulatory action. The State of Missouri and twelve others sued, seeking to challenge the legality and reasonableness of the Interim Estimates in the abstract, before they had been applied by any agency to justify a final agency action.

A unanimous panel of this Court held that Plaintiffs failed to satisfy the injury-in-fact and causation requirements of Article III standing. Neither E.O. 13990 nor the Interim Estimates require States to do anything or refrain from doing anything. In the event that an agency relies on the Interim Estimates to adopt a regulation that does impose some burden on

Plaintiffs, they will be free to challenge that regulation at that time in the normal course. The panel decision was correct and does not conflict with any decision of the Supreme Court, this Court, or another court of appeals.

Nor does this case involve a question of extreme importance warranting en banc review in the absence of such a conflict. The panel's holding that the Working Group is not an agency subject to the Administrative Procedure Act (APA) is a routine application of law to fact and is not even determinative in this case. Moreover, because Plaintiffs "may challenge" any "specific agency actions justified by the interim … estimates [that] inflict concrete and particularized injury" on them, Op. 13, the adverse judgment in this case has no effect on Plaintiffs' cognizable legal interests. The petition for rehearing should be denied.

## STATEMENT

**A.** The President is responsible for general administrative control of the Executive Branch, including oversight of policymaking and rulemaking processes. *See, e.g.*, *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2197-98 (2020); *Sierra Club v. Costle*, 657 F.2d 298, 405 (D.C. Cir. 1981). Since the early 1970s, every President has required some form of rulemaking review overseen by the Office of Management and Budget (OMB). And since 1993,

2

E.O. 12866 has mandated a prepublication review process requiring agencies to undertake a cost-benefit analysis for certain "significant" regulatory actions. E.O. 12866 § 6(a)(3)(C). These analyses are informational documents used for planning purposes and have no independent legal effect.

Since the George W. Bush Administration, cost-benefit analyses under E.O. 12866 have regularly evaluated the impacts of emissions known to contribute to global climate change. Agencies have quantified these impacts using scientific models that estimate the net effects of emissions on various factors (such as agricultural productivity, sea level rise, and human health) and aggregate them into a dollar figure, known as the social cost of greenhouse gases (SC-GHG). To improve the consistency and quality of these estimates, OMB convened an interagency group of experts (the Working Group[1]) to develop a scientifically robust method for quantifying SC-GHG, first for carbon dioxide and then for other gases. In 2010, the Working Group developed a methodology that synthesizes three independent models (one yielding a Nobel Prize) that were the most widely accepted, peer-reviewed frameworks for translating emissions into climate impacts.

---

[1] The Working Group's formal name is now the Interagency Working Group on the Social Cost of Greenhouse Gases.

Appellate Case: 21-3013     Page: 8     Date Filed: 01/13/2023 Entry ID: 5235845

OMB subsequently sought public comment on the methodology and resulting estimates and obtained multiple forms of outside expert review, including by the National Academies of Sciences, Engineering, and Medicine.

Though agencies were not directed by executive order to employ these early estimates in rulemaking, many chose to do so. The Seventh Circuit upheld consideration of the 2013 estimates in the context of a federal energy-efficiency rule for commercial refrigeration equipment. *Zero Zone, Inc. v. U.S. Dep't of Energy*, 832 F.3d 654, 677-78 (7th Cir. 2016).

In 2017, President Trump disbanded the Working Group and withdrew its analyses. E.O. 13783, § 5(b). He nonetheless expected that agencies would continue to "monetiz[e] the value of changes in greenhouse gas emissions." *Id.* § 5(c).

**B.** President Biden issued E.O. 13990 in January 2021. The President determined that accurately capturing the full costs of greenhouse gas emissions "facilitates sound decision-making, recognizes the breadth of climate impacts, and supports the international leadership of the United States on climate issues." E.O. 13990, § 5. Accordingly, he reconvened the Working Group to formulate revised SC-GHG estimates, originally targeted for January 2022. *Id.* § 5(b). In the meantime, the President directed the

4

Working Group to publish "interim" SC-GHG estimates for three gases—carbon dioxide, methane, and nitrous oxide—"within 30 days" and stated that "agencies shall use" those estimates "when monetizing the value of changes in greenhouse gas emissions resulting from regulations and other relevant agency actions" to the extent "consistent with applicable law." *Id.* §§ 5(b)(ii)(A), 8(b).

In February 2021, the Working Group issued a technical support document containing the Interim Estimates. R.Doc. 28-3 (App. 324-71). These estimates were identical to prior 2016 estimates, adjusted for inflation, which the Working Group found to be better justified methodologically than values used under the last Administration. *Id.* at 3 (App. 327). OMB invited public comment on the Interim Estimates' methodology, including on how best to incorporate the latest advances in science and economics. 86 Fed. Reg. 24,669 (May 7, 2021).

In June 2021, OMB's Office of Information and Regulatory Affairs (OIRA) issued guidance to assist agencies in applying Section 5 of E.O. 13990. R.Doc. 28-4 (App. 373-75) (OIRA Guidance). As that guidance makes clear, the Interim Estimates will be used when agencies prepare cost-benefit analyses "for purposes of compliance with E.O. 12866." *Id.* at 1 (App. 373).

Appellate Case: 21-3013     Page: 10     Date Filed: 01/13/2023 Entry ID: 5235845

The guidance confirms, though, that any use of the Interim Estimates is "subject to applicable law" as enacted by Congress, including "principles of administrative law." *Id.* at 2 (App. 374). Thus, if an agency relies on a cost-benefit analysis using the Interim Estimates to justify a final action, it "must respond to any significant comments on those estimates and ensure its analysis" is "not arbitrary or capricious." *Id.*

**C. 1.** Missouri and twelve other States brought this suit seeking to challenge the Interim Estimates. The district court dismissed the complaint for lack of jurisdiction, concluding "that Plaintiffs lack standing and that their claims are not ripe for adjudication." R.Doc. 48, at 2 (App. 501).

A unanimous panel of this Court affirmed. The panel held that "the States' 'generalized grievance of how the current administration is considering SC-GHG … fails to meet the standards of Article III standing.'" Op. 13 (alteration in original). The panel agreed with the district court that the "Interim SC-GHG estimates, alone, do not injure Plaintiffs." Op. 8. Indeed, "E.O. 13990 explicitly states that the interim SC-GHG estimates apply only to federal 'executive departments and agencies'"; neither it nor the estimates "impose obligations on the States." Op. 9. Rather, "[t]he injury that Plaintiffs fear is from hypothetical future regulation." Op. 8. The

panel explained that Plaintiffs' "highly attenuated theory of injury"—which assumes that an agency will "'inevitably' issue one or more regulations that rely in some way upon the Interim Estimates; that such agency will 'inevitably' disregard any objections to the methodology by which the Interim SC-GHG estimates were calculated; and that this yet-to-be-identified regulation will then harm Plaintiffs in a concrete and particularized way"—failed to establish that any injury was "certainly impending" or "fairly traceable to the challenged action of the defendant[s]." Op. 7-8.

Finally, the panel held that Plaintiffs lack standing to pursue a procedural claim under the APA for two reasons. First, Plaintiffs had asserted "only 'a procedural right *in vacuo*.'" Op. 11. The panel rejected Plaintiffs' reliance on *Iowa League of Cities v. EPA*, 711 F.3d 844 (8th Cir. 2013), because that case involved a challenge to "binding policy promulgations" that imposed "regulatory obligations above and beyond those that can be statutorily imposed." Op. 11. Here, by contrast, "the alleged procedural harm is untethered to any specific harm" caused by "a specific agency action." *Id.* Second, the panel held that the Working Group was not an "agency" subject to the APA's notice-and-comment requirements. Op. 11.

7

**2.** Another group of States separately challenged the Interim Estimates in the Western District of Louisiana. The district court in that case preliminarily enjoined various federal agencies and officials from using the Interim Estimates or implementing Section 5 of E.O. 13990 in any manner. *See Louisiana v. Biden*, No. 22-30087, 2022 WL 866282, at *2 (5th Cir. Mar. 16, 2022).

A panel of the Fifth Circuit stayed the preliminary injunction, finding that "the Plaintiff States lack standing" to pursue their "generalized grievance" about the Interim Estimates. *Id.* The court noted that, because "[t]he Interim Estimates on their own do nothing to the Plaintiff States," any claimed injury "is, at this point, merely hypothetical." *Id.* The court also explained that the plaintiff States were unlikely to "meet their burden on causation" because "agencies consider a great number of other factors in determining when, what, and how to regulate or take agency action (and the Plaintiff States do not challenge a *specific* regulation or action)." *Id.* The court observed that if any increased regulatory burdens came to pass in the future, there would be "no obstacle to prevent the Plaintiff States from challenging a specific agency action" in the normal course. *Id.* at *3. The Fifth Circuit denied rehearing en banc and the Supreme Court declined to

8

vacate the stay, with no dissent noted on either occasion. *Order, Louisiana v. Biden*, No. 22-30087 (5th Cir. Apr. 14, 2022); *Order, Louisiana v. Biden*, No. 21A658 (U.S. May 26, 2022).

## ARGUMENT

### THE UNANIMOUS PANEL DECISION WAS CORRECT AND DOES NOT WARRANT EN BANC REVIEW

The panel correctly applied governing precedent to hold that Plaintiffs lack standing to challenge the Interim Estimates. Indeed, a panel of the Fifth Circuit reached the same conclusion in granting a stay of a preliminary injunction in a nearly identical lawsuit. The unanimous judgment in this case does not conflict with any prior decision of this Court, the Supreme Court, or any other court of appeals, and it does not involve a question of exceptional importance. *See* Fed. R. App. P. 35(a).

### A. Article III Does Not Permit Suits Founded on Generalized Fears of Future Regulation

**1.** To demonstrate Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Where, as here, a plaintiff challenging government action is not itself the "object" of

9

that action, standing is "ordinarily 'substantially more difficult to establish.'" *Summers v. Earth Island Inst.*, 555 U.S. 488, 493-94 (2009).

Plaintiffs lack standing to challenge the Interim Estimates because, as both the panel here and the Fifth Circuit recognized, "the Interim SC-GHG estimates, alone, do not injure Plaintiffs." Op. 8; *see also Louisiana*, 2022 WL 866282, at *2. They are an informational tool designed to improve the accuracy of "quantified cost-benefit analysis" that agencies conduct "before adopting regulations." Op. 4. To that end, E.O. 13990 directs federal agencies to use the Interim Estimates when they monetize the value of changes in greenhouse gas emissions to inform the analysis of contemplated agency action. But it does not require any agency to issue a particular regulation. It does not require any agency to rely on cost-benefit analysis when deciding whether or how to regulate. It does not even require an agency that chooses to regulate based on cost-benefit analysis to use the Interim Estimates in all circumstances. *See* OIRA Guidance (explaining that applicable statutes, including the APA, might require a different approach in a particular rulemaking). And it certainly "neither requires nor forbids any action" by the States. R.Doc.48, at 16 (App. 515); *see also* Op. 9 ("[T]he

10

interim SC-GHG estimates apply only to federal 'executive departments and agencies.'").

Because neither E.O. 13990 nor the Interim Estimates cause them harm, Plaintiffs must rely on the prospect of burdens imposed by "hypothetical future regulation possibly derived from these Estimates." Op. 8. But "agencies consider a great number of other factors in determining when, what, and how to regulate or take agency action." *Louisiana*, 2022 WL 866282, at *2. "There is simply no way to predict how the Interim Estimates will affect an agency's analysis, if at all, without resorting to sheer speculation." R.Doc.48, at 19 (App. 518). And the Supreme Court has repeatedly rejected "standing theories that rest on speculation about the decisions of independent actors." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013). The panel therefore correctly held that Plaintiffs had failed to demonstrate "the requisite causation," that any future injury would be "fairly traceable to the challenged action." Op. 8.

2. In their rehearing petition, Plaintiffs challenge the panel's standing analysis only insofar as it applies to their procedural claim that they were denied an opportunity to comment on the Interim Estimates. They contend (Pet. 6-9) that the panel's conclusion that Plaintiffs asserted "a procedural

11

right *in vacuo*," Op. 11, conflicts with this Court's prior decision in *Iowa League of Cities v. EPA*, 711 F.3d 844, 859 (8th Cir. 2013). That case only underscores the lack of standing here.

When "violation of a procedural right" is claimed, the "ultimate basis of [the plaintiff's] standing" is not the procedural violation but the "threatened concrete interest" at issue in the proceeding. *Iowa League of Cities*, 711 F.3d at 870-71 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 n.8 (1992)); *see Spokeo*, 578 U.S. at 341 (reaffirming that "a bare procedural violation, divorced from any concrete harm," is not enough). In *Iowa League of Cities*, standing existed because the challenged agency action "constituted new regulatory requirements" on municipal sewer systems. 711 F.3d at 854; *see id.* at 863-65 (explaining that the action had "a binding effect on regulated entities" by "establishing a new prohibition on bacteria mixing zones" and creating a "binding policy on blending").

Here, by contrast, "neither the interim SC-GHG estimates nor EO 13990 impose obligations on the States." Op. 9. If an agency were to rely on the Interim Estimates to justify a final agency action that actually does impose "billions of dollars of regulatory burdens" on the States, Op. 10, then Plaintiffs' interest in "avoiding regulatory obligations" might well provide

12

standing to bring a procedural challenge to that action. *Iowa League of Cities*, 711 F.3d at 871. But Plaintiffs in this case have challenged the Interim Estimates in the abstract, independent of any agency's exercise of regulatory authority. The procedural violation alleged in this case is therefore "untethered to any specific harm." Op. 11. Simply being "denied the ability to file comments" on the Working Group's technical support document is "insufficient to create Article III standing." *Summers*, 555 U.S. at 496.[2]

Plaintiffs' argument (Pet. 9) that "the Working Group's decision" is "binding" on future agency action also fails. The Working Group issued a technical support document containing the most accurate estimates for SC-GHG available at the time. Nothing in that informational document binds any agency in any manner. E.O. 13990—issued by the President, not the Working Group—requires agencies to use the Interim Estimates for certain internal analyses, but it does not bind agencies in the exercise of their regulatory authority. *See* E.O. 13990, § 8(a) (providing that "[n]othing in this

---

[2] Plaintiffs' effort (Pet. 10) to distinguish *Summers* on its procedural history fails. The Supreme Court's holding—that the plaintiffs there lacked standing to challenge agency regulations that applied only to government officials—did not turn on the fact that the parties had settled other claims. Pet. 10. Rather, the problem was that the plaintiffs identified no concrete injury flowing from the regulations' mere existence. *Summers*, 555 U.S. at 493, 495. The same is true here as to the Interim Estimates.

13

order shall be construed to impair or otherwise affect … the authority granted by law to an executive department or agency"). There is certainly no requirement to use the Interim Estimates in a rulemaking "without reference to [the] record." Pet. 8; *see* OIRA Guidance 2 (App. 374) (use of the Interim Estimates must be consistent with "principles of administrative law").

Nor is it true that any use of the Interim Estimates would be "virtually determinative" (Pet. 9) of the outcome of a future rulemaking. The Supreme Court held in *Bennett v. Spear*, 520 U.S. 154 (1997), that ordinary rules of causation do not preclude standing based on "injury produced by determinative or coercive effect upon the action of someone else." *Id.* at 169. But for reasons explained above, neither E.O. 13990 nor the Interim Estimates have any such effect. Indeed, Plaintiffs have never identified a single regulation where an agency's use of the Interim Estimates has dictated the outcome of a rulemaking.[3] This repeated failure forecloses their efforts to establish standing.

---

[3] The examples they pointed to in prior briefing demonstrate the opposite. *See, e.g.*, Revised 2023 and Later Model Year Light-Duty Vehicle Greenhouse Gas Emissions Standards, 86 Fed. Reg. 74,434, 74,498 (Dec. 30, 2021) ("EPA weighed the relevant statutory factors to determine the

*Continued on next page.*

**B.    The Working Group Is Not an Agency Because it Exercises No Independent Authority**

The panel correctly held that Plaintiffs lack standing to pursue their procedural claim for a second, independent reason: the Working Group is not an agency subject to the APA's notice-and-comment requirements.  Op. 11.

While the test has been formulated in different ways, "common to every case" in which an entity was determined to be an agency "has been a finding that the entity in question 'wielded substantial authority independently of the President.'" *Citizens for Responsibility & Ethics in Washington v. Office of Admin.*, 566 F.3d 219, 222 (D.C. Cir. 2009).  Whatever authority the Working Group has flows solely and directly from the President through E.O. 13990.  Such "presidential delegations of authority … simply make the entity an extension of the President." *Main St. Legal Servs., Inc. v. National Sec. Council*, 811 F.3d 542, 558 (2d Cir. 2016); *see, e.g.*, *Soucie v. David*, 448 F.2d 1067, 1073, 1075 (D.C. Cir. 1971) ("agency" found where Congress "delegat[ed] some of its own broad power of inquiry").  For this reason, as the panel recognized, a holding that the Working Group is an

appropriate standard and the analysis of monetized GHG benefits was not material to the choice of that standard."), cited at Reply Br. 8.

Appellate Case: 21-3013    Page: 20    Date Filed: 01/13/2023 Entry ID: 5235845

agency subject to the APA would "interfer[e] with the President's exercise of his executive power." Op. 12.

Plaintiffs identify no error in the panel's conclusion that the Working Group is not an agency. They note (Pet. 12) that several members of the Working Group are agency heads (or their designees, *see* E.O. 13990, § 5(b)(i)). But this is no different from *Meyer v. Bush*, 981 F.2d 1288, 1294 (D.C. Cir. 1993), where "[t]he cabinet members serving on the Task Force [on Regulatory Relief] … were acting not so much as the heads of their departments, but rather as the functional equivalents of assistants to the President."

Next, Plaintiffs argue (Pet. 11-12) that the panel wrongfully "sought to distinguish" cases applying the definition of "agency" under the Freedom of Information Act (FOIA). This argument is difficult to follow. The "substantial independent authority" test Plaintiffs advocate applies under both FOIA and the APA. *See Dong v. Smithsonian Inst.*, 125 F.3d 877, 881 (D.C. Cir. 1997) ("Our cases … requir[e] that an entity exercise substantial independent authority before it can be considered an agency for § 551(1) purposes."); *Meyer*, 981 F.2d at 1291 (explaining that Congress codified the requirement in FOIA's definition of agency). Thus, an entity like the

16

Working Group that lacks substantial independent authority is not an agency under either statute.[4]

Finally, Plaintiffs contend (Pet. 13) that the Working Group has "inherent authority to issue legally binding directives to other federal agencies." The Working Group was created by the President and developed the Interim Estimates pursuant to his directive. E.O. 13990, § 5(b)(ii)(A). It was the President—not the Working Group—who directed agencies to use the Interim Estimates for internal cost-benefit analyses in an "exercise of the President's executive power." Op. 4.[5] In no sense has the Working Group exercised substantial authority independent of the President. Its "'sole function is to advise and assist' the President." *Meyer*, 981 F.2d at 1298.

Quite apart from being wrong on the merits, Plaintiffs fail to demonstrate that this aspect of the panel's reasoning presents an exceptionally important question that would justify en banc review in the absence of any conflict with Supreme Court or circuit precedent. As an

---

[4] To the extent it matters, Plaintiffs' assertion (Pet. 12) that the APA's "definition of agency … is broader" than FOIA's is incorrect. *See, e.g.*, *Cotton v. Heyman*, 63 F.3d 1115, 1121 (D.C. Cir. 1995).

[5] The President "is not an agency." *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992).

initial matter, Plaintiffs' suit fails for the independent reason that they have no cognizable injury fairly traceable to the Interim Estimates. Regardless, whether an Executive Branch entity is an "agency" is a commonly litigated question resolved by a well-established framework. The fact that there is no precedent supporting Plaintiffs' preferred outcome does not make this exceptional. Nor, contrary to Plaintiffs' assertion (Pet. 10), did the panel raise the issue *sua sponte*. Both parties discussed this matter in their briefs, *see, e.g.*, Opening Br. 49-50; Response Br. 60-61, and counsel for Plaintiffs addressed it at oral argument, *see, e.g.*, Oral Argument Recording 12:31-13:00 (identifying as a relevant question "is the Interagency Working Group an agency within the meaning of the APA?").

Plaintiffs erroneously assert that the panel's ruling "permits the Executive Branch [to] make an end-run around the APA" by "impos[ing] binding legislative rules through interagency working groups." Pet. 6, 14. A legislative rule "imposes new rights or duties" or "purports to create new substantive requirements" for regulated entities to follow. *Northwest Nat'l Bank v. U.S. Dep't of the Treasury*, 917 F.2d 1111, 1117 (8th Cir. 1990). As explained above, E.O. 13990 and the Interim Estimates do neither. To the extent an agency relies on the Interim Estimates in promulgating a

legislative rule, that use of the Estimates will be subject to notice and comment. *See* OIRA Guidance 2 (App. 374).

Nor would publication of the Interim Estimates "be subject to the APA" if done by an agency. Pet. 6. The Working Group's technical support document is the kind of "informational report" that "many courts" have held does not constitute final agency action reviewable under the APA. *See Parsons v. U.S. Dep't of Justice*, 878 F.3d 162, 169-70 (6th Cir. 2017) (describing examples). "Even if other agencies" rely on such a report in future rulemakings, "these regulations are not direct consequences of the [r]eport, but are the product of independent agency decisionmaking." *Flue-Cured Tobacco Coop. Stabilization Corp. v. U.S. EPA*, 313 F.3d 852, 860 (4th Cir. 2002). And again, the issuance of regulations pursuant to such independent decisionmaking would be fully subject to the APA's requirements.

Appellate Case: 21-3013     Page: 24     Date Filed: 01/13/2023 Entry ID: 5235845

## CONCLUSION

The petition for rehearing en banc should be denied.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
    *Attorney General*

SAYLER A. FLEMING
  *United States Attorney*

MICHAEL S. RAAB
 */s/ Thomas Pulham*
THOMAS PULHAM
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7323*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4332*
  *thomas.pulham@usdoj.gov*

  *Counsel for Defendants*

JANUARY 2023

## CERTIFICATE OF COMPLIANCE

This response to the petition for rehearing contains 3,896 words. This response complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in 14-point CenturyExpd BT, a proportionally spaced typeface.

Under Circuit Rule 28A(h)(2), I further certify that this brief has been scanned for viruses and is virus-free.

/s/ Thomas Pulham
Thomas Pulham
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2023, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

/s/ Thomas Pulham
Thomas Pulham
*Counsel for Defendants*
